1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7   UNITED STATES OF AMERICA,                  Case No. 2:14-cr-00290-KJD
                                                        2:19-cv-01693-KJD
8                              Plaintiff,
                                                              ORDER
9        v.

10  ANOUSONE SAVANH,

11                              Defendant.

12        Presently before the Court is Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set

13  Aside, or Correct a Sentence by a Person in Federal Custody (#232/241).

14  I. Background

15        On August 27, 2014, the government filed a two-count indictment charging Savanh with

16  receiving child pornography under 18 U.S.C. § 2252(a)(2)(B) (count one) and possessing child

17  pornography under 18 U.S.C. § 2252A(a)(5)(B) (count two). Savanh moved to suppress two

18  recorded statements he made on March 18, 2014, when a search warrant was served at his home

19  where Detective Wayne Nichols interrogated him after he was read his *Miranda* warnings and

20  waived his right to remain silent.[1] Savanh argued his confession was involuntary under the

21  totality of the circumstances, and the second interrogation violated *Miranda*. However, this

22  Court denied his motion to suppress those statements as untimely and on the merits. The Court

23  found that Defendant's confession was made knowingly and voluntarily under the totality of the

24  circumstances. Further the Ninth Circuit Court of Appeals affirmed the Court's denial of the

25  motion to suppress. See Doc. No. 219.

26        Days before trial, the government filed a motion to exclude all defense expert witness

27  

28  _____

[1] The interviews were conducted in Detective Nichols' car. About thirty (30) minutes elapsed between the
two interviews.

testimony. Responding in opposition, Savanh explained each of his experts—Larry Smith, Donald Cinco, and Tami Loehrs—would explain critical parts of his defense theory that his computer was hacked by a third-party without his knowledge. The district court issued a pretrial order denying the government's motion to exclude Smith and Cinco, but granting the motion to exclude Loehrs on the basis that her testimony would be cumulative.

The government presented one witness in its case-in-chief: Detective Nichols, who downloaded child pornography from Savanh's IP address and found files of child pornography on Savanh's computer pursuant to a search warrant. The government then played Savanh's recorded statements, and rested after Nichols testified. Savanh moved for acquittal based on insufficient evidence under Federal Rule of Criminal Procedure ("Rule") 29(a). The district court denied the motion. On appeal, the Ninth Circuit affirmed the district court's denial of the Rule 29 motion.

Savanh then took the stand in his defense. Savanh then explained that he lied to Nichols when he told him that he was responsible for the child pornography to prevent police from investigating his son. Savanh testified that he had never seen the illicit files before and did not know where they were located on the computer or how they got there.

The defense called Larry Smith and Donald Cinco who conducted forensic examinations of Savanh's computer and completed written reports. Despite its pretrial ruling, the district court reversed its order and only permitted Smith and Cinco to provide fact testimony after the Government, on *voir dire*, decimated the qualifications and work of the defense experts.[2] The Court was left with no choice but to prevent their testimony pursuant to Rule 702 and the Court's duty to avoid unscientific or unreliable testimony that could confuse the jury. Savanh also called Troy Kelly, the government's expert forensic examiner. Kelly testified he read Smith's and Cinco's reports and examined the forensic computer. Kelly found malware on the computer, but concluded a local human user sitting at the computer was responsible for the child pornography.

Savanh attempted to call forensic expert Tami Loehrs, but the Court excluded her

---

[2] This order was also affirmed by the Ninth Circuit Court of Appeals.

testimony.[3] The district court denied Savanh's request for a *voir dire* or canvassing of Loehrs, who was present and available. Savanh moved for a mistrial based on his inability to present expert evidence vital to his defense. The district court denied the mistrial motion. The defense rested. Nichols testified in rebuttal. The jury found Savanh guilty of receipt and the lesser-included offense of possession of child pornography.

The Court notes that having heard the out-of-court recorded statements that Savanh made to Nichols, Nichols' testimony, and the in-court testimony of Savanh, the most believable statement heard during trial was Defendant's first statement to Nichols. This was confirmed by the jury when they rejected his testimony and found him guilty. Further, the jury commented after the trial that they did not believe Defendant's second statement or in-court testimony.

The Probation Office prepared a Presentence Investigation Report (PSR) using the 2015 Guidelines. PSR ¶ 20. The PSR calculated an offense level of 35 within Criminal History Category I, resulting in a guideline range of 168-210 months. PSR p.17. The PSR recommended a low-end sentence of 168 months and lifetime supervised release with conditions. PSR pp.18-21. The government argued for a 240-month sentence. The government also requested a two-level enhancement for obstructing justice, arguing Savanh was a "liar" who committed perjury by claiming his innocence at trial.

Savanh requested a sentence of time served, followed by a significant period of home detention and ten years of supervised release with conditions based on his particular circumstances. The district court applied the 2-level enhancement for obstructing justice and imposed a sentence of 210 months in prison and lifetime supervised release with conditions.

After the Ninth Circuit Court of Appeals denied his appeal, Savanh filed a petition for a *writ of certiorari* with the United States Supreme Court. That *writ of certiorari* was denied on October 1, 2018. Subsequently, Defendant filed the present motion to vacate under 28 U.S.C. § 2255.

///

///

---

[3] Again, this order was affirmed by the Ninth Circuit Court of Appeals.

II. Standard under § 2255

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed the sentence. United States v. Monreal, 301 F.3d 1127, 1130 (9th Cir. 2002). Section 2255 provides four grounds upon which a sentencing court may grant relief to a federal prisoner: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a); see also Davis v. United States, 417 U.S. 333, 344–45 (1974); Monreal, 301 F.3d at 1130; United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999).

To warrant the granting of relief, the movant must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also United States v. Montalvo, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that Brecht's harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254."). Such relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." Davis, 417 U.S. at 346; see also United States v. Gianelli, 543 F.3d 1178, 1184 (9th Cir. 2008).

Procedural Bar Doctrine

The general rule of the procedural bar doctrine is that claims that could have been, but were not, raised by the movant on direct appeal are not cognizable if presented in a § 2255 motion. See United States v. Frady, 456 U.S. 152 (1982) (a collateral challenge is not a substitute for an appeal); Sunal v. Large, 332 U.S. 174 (1947) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal."); Unites States v. Dunham, 767 F.2d 1395, 1397 (9th Cir. 1985) ("Section 2255 is not designed to provide criminal defendants repeated opportunities to overturn their convictions on grounds which could have been raised on direct appeal."). "The procedural-

- 4 -

default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Massaro v. United States, 538 U.S. 500, 504 (2003).

"[A] procedural default arising from the failure to exhaust may be excused if the petitioner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.' " Manning v. Foster, 224 F.3d 1129, 1132–33 (9th Cir. 2000) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A fundamental miscarriage of justice occurs where a 'constitutional violation has probably resulted in the conviction of one who is actually innocent.' " Id. (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, "the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.' " Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). This is because "habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.' " Id. at 621 (citation omitted). Accordingly, "most claims are procedurally defaulted by both federal and state prisoners in habeas proceedings when not raised on direct appeal, absent a showing of cause and prejudice or actual innocence." United States v. Braswell, 501 F.3d 1147, 1149 n.1 (9th Cir. 2007).

Relitigation Bar

It is also well-established that claims or arguments a defendant previously raised on direct appeal are not cognizable in a § 2255 motion. Davis, 417 U.S. at 342 (issues determined in a previous appeal are not cognizable in a § 2255 motion absent an intervening change in the law; United States v. Redd, 759 F.2d 699, 701 (9th Cir. 1985) (holding that claims previously raised on appeal "cannot be the basis of a § 2255 motion"); United States v. Currie, 589 F.2d 993, 995 (9th Cir. 1979) ("Issues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding."); Egger v. United States, 509 F.2d 745, 748 (9th Cir. 1975) ("Issues raised at trial and considered on direct appeal are not subject to collateral attack under 28 U.S.C. § 2255.") (citing Clayton v. United States, 447 F.2d 476, 477 (9th Cir. 1971) (holding

1    that the movant's "attempt to relitigate the legality of the search and seizure was properly

2    rejected by the district court" because that contention had already been rejected on direct

3    appeal)).

4         This bar against relitigating issues in a § 2255 proceeding is an application of the law of

5    the case doctrine. See United States v. Jingles, 702 F.3d 494, 498 (9th Cir. 2012) ("A collateral

6    attack is the 'same case' as the direct appeal proceedings for purposes of the law of the case

7    doctrine."). "Under the 'law of the case' doctrine, a court is ordinarily precluded from

8    reexamining an issue previously decided by the same court, or a higher court, in the same case."

9    Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988). "When a defendant has raised a

10   claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may

11   not be used as basis for a subsequent § 2255 petition." United States v. Hayes, 231 F.3d 1132,

12   1139 (9th Cir. 2000) (concluding that "[i]t is the law of this case that the government did not

13   violate its Brady obligation" where the defendant's Brady claims had already been expressly

14   addressed and rejected on direct appeal).

15   III. Analysis

16        A. Ground One and Two: Fourth Amendment Warrantless Search Claims

17        The Fourth Amendment provides that "[t]he right of the people to be secure in their

18   persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

19   violated." U.S. Const. amend. IV. The threshold question is whether a Fourth Amendment

20   "search" has occurred. See Kyllo v. United States, 533 U.S. 27, 31 (2001). "[G]overnment

21   conduct qualifies as a search only if it violates a reasonable expectation of privacy." United

22   States v. Borowy, 595 F.3d 1045, 1047 (9th Cir. 2010) (citing Katz v. United States, 389 U.S.

23   347 (1967)).

24        However, in this case, Defendant utilized a peer-to-peer, or P2P, file sharing network that

25   allowed users to share files, including videos, audios, pictures and texts. According to trial

26   testimony, P2P networks allow users to acquire files directly from other network users from a

27   file on their personal computer that is designated as a "shared file." "Accessing files in a 'shared'

28   folder does not violate the Fourth Amendment because no reasonable expectation of privacy

exists with regard to such files." See United States v. Blouin, 2017 WL 3485736, at *2 (Aug. 15, 2017); see also United States v. Dreyer, 804 F.3d 1266, 1278 n.6 (9th Cir. 2015) ("[A]ccessing files made available through [a P2P] file-sharing software does not constitute a search, … [because] when an individual uses a file-sharing software, he opens his computer to anyone else with the same freely available program, thereby opening up his download folder to the world"); United States v. Ganoe, 538 F.3d 1117, 1127 (9th Cir. 2008) (recognizing that "as a general matter an individual has an objectively reasonable expectation of privacy in his personal computer," but "fail[ing] to see how this expectation c[ould] survive [the defendant's] decision to install and use [P2P] file-sharing software, thereby opening his computer to anyone else with the same freely available program"). Therefore, no warrant was required for the downloading activity.

Additionally, Defendant attempts to take this argument a step further and assert that the signal sent from the investigator's computer to Defendant's in order to initiate a download constitutes illegal investigative trespassing in violation of the Fourth Amendment. See, e.g., Florida v. Jardines, 133 S. Ct. 1409 (2013) (focusing on owner's property rights, rather than the reasonable expectation of privacy in finding that use of a drug sniffing dog on property owner's porch area violated the Fourth Amendment). However, in United States v. Jones, 132 S. Ct. 945 (2012), the Supreme Court noted that the Jones trespass test may not apply to electronic transmissions. Jones, 132 S. Ct. at 953 ("Situations involving merely transmission of electronic signals without trespass would remain subject to Katz analysis"); see also Jones, 132 S. Ct. at 962 ("Trespass to chattels has traditionally required a physical touching of the property.") (Alito, J., concurring).

However, no trespass occurred in this case because the general public, and by extension law enforcement, had permission to download files from Savanh's computer. By installing the peer-to-peer file sharing software on his computer, Defendant made available to the public the contents of his shared folder. Accordingly, he had effectively given the public permission to access and download the files in his shared folder. As the Court in Jardines noted, the police have as much right to enter a constitutionally protected space as the public does. 133 S. Ct. at

1416. Therefore, no trespass occurred.

      <u>B. Ground Three: Fifth Amendment – Compelled to be a Witness Against Himself</u>

      Essentially, Defendant argues that because the Government only called one witness, the detective Nichols, the only evidence of "knowing" and "receipt" were Savanh's own statement to Nichols. Defendant asserts that this means that Defendant has been compelled to be a witness against himself in violation of the Fifth Amendment. However, this sufficiency of the evidence argument was considered and rejected by the Ninth Circuit thereby violating the Relitigation Bar. <u>Davis</u>, 417 U.S. at 342 (issues determined in a previous appeal are not cognizable in a § 2255 motion absent an intervening change in the law). Therefore, the Court denies Defendant's third ground of his motion.

      Assuming that this is not merely a sufficiency of the evidence argument, it is factually untrue. First, Defendant knowingly waived his Fifth Amendment rights and spoke to Nichols voluntarily. Second, while Nichols may have been the only witness, his testimony was not the only evidence. Defendant's computer and work schedule provided more than sufficient evidence to demonstrate "knowing" "receipt" of child pornography. Accordingly, the Court denies these claims as well.

      <u>C. Ground Four: Fifth Amendment</u>

      Defendant describes this claim like this: The prosecutor did not act as a minister of justice thereby depriving Savanh of due process of law. Defendant argues the five following actions by the prosecutor violated Savanh's right to a fair trial:

          (1) Shortly before trial began, the prosecutor moved to preclude Savanh's computer forensic analysts from testifying contending that they were either not qualified to testify as experts or their testimony was cumulative;

          (2) The prosecutor also sought to compel disclosure of records protected by the attorney client privilege and by the attorney work product doctrine;

          (3) During trial, the prosecutor opposed the defense motion to call the prosecution computer forensic analyst as a witness during the defense phase of trial;

          (4) In its sentencing memorandum, the prosecutor called Savanh a "liar" and a "so-called family man" because Savanh continued to maintain his innocence after trial;

1       (5) The prosecutor sought—and received—a two-level
2       enhancement for obstruction of justice on this basis.

3       In reviewing alleged prosecutorial misconduct to which a defendant objected at trial, the

4  Court reviews under the harmless error standard. United States v. Alcantara-Castillo, 788 F.3d

5  1186, 1190 (9th Cir. 2015). The Court will order a new trial only if it appears more probable than

6  not that the misconduct rendered the trial fundamentally unfair. Id. Furthermore, where a

7  defendant alleges multiple instances of misconduct, the Court must consider the combined

8  prejudicial effect of the misconduct. Berger v. United States, 295 U.S. 78, 89 (1935).

9       Beginning with item (2) in which the prosecutor sought to compel disclosure of records,

10  the Court denies this claim, because the prosecutor made the motion in accordance with the

11  Federal Rules of Criminal Procedure. See Doc. No. 122. Further, the Court denied the motion.

12  See Doc. No. 130. Therefore, it could not have rendered the trial fundamentally unfair.

13       Next, all of the remaining assertions that the prosecutor committed misconduct were

14  raised on appeal and rejected. Therefore, they could not have fundamentally affected the

15  outcome of the trial. The Ninth Circuit upheld the Court orders that: (1) prevented a defense

16  expert from offering cumulative testimony; (2) refused to allow that expert from testifying after

17  defense violated an order of the court; (3) gave Defendant a two-level increase for obstruction of

18  justice; and (4) rejected the Defense's argument that the Court was punishing Defendant for

19  going to trial by increasing his sentence. Therefore, none of the underlying actions of the

20  prosecutor, i.e. filing motions, seeking to exclude expert witnesses, seeking discovery according

21  to the rules and arguing for a strong sentence, were misconduct. Therefore, the Court denies

22  Defendant's fourth ground for relief.

23       D. Ground Five: Sixth Amendment – Preclusion of Defense Evidence

24       Ground Five continues to attack the Court's orders excluding expert testimony that the

25  Court has already demonstrated were affirmed by the Court of Appeals. Accordingly, this ground

26  for relief is barred by United States v. Redd, 759 F.2d 699, 701 (9th Cir. 1985) (holding that

27  claims previously raised on appeal "cannot be the basis of a § 2255 motion").

28

1        E. Ground Six: Ineffective Assistance of Counsel

2        To the extent that any of the previous claims were not raised because appellate counsel

3   was ineffective for failing to raise them on appeal, they are dismissed. Here, Defendant asserts

4   that he received ineffective assistance of trial counsel for the following reasons:

5        (1) Trial counsel did not file a motion to contest the search methodology of the

6            investigating detective;

7        (2) trial counsel failed to timely file the motion to suppress Defendant's statements;[4]

8        (3) trial counsel failed to retain actual experts to forensically examine the computer;

9        (4) trial counsel failed to retain an expert to provide context for Savanh's confession;

10       (5) duplicate of number (3);

11       (6) failure to investigate the history of the computer; and

12       (7) failure to investigate alibi defenses.

13       To establish ineffective assistance of counsel, a defendant must show both deficient

14  performance of counsel and prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).

15  Deficient performance is demonstrated when "counsel made errors so serious that the counsel

16  was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  There

17  is a strong presumption that counsel's conduct falls within "the wide range of reasonable

18  professional assistance." Id. at 689.  A tactical decision by counsel with which the defendant

19  disagrees cannot form the basis of an ineffective assistance claim. Id.; Guam v. Santos, 741 F.2d

20  1167, 1169 (9th Cir. 1984).

21       To show prejudice, a defendant must demonstrate "that there is a reasonable probability

22  that, but for counsel's unprofessional errors, the result of the proceeding would have been

23  different.  A reasonable probability is a probability sufficient to undermine confidence in the

24  outcome." Id. at 694.  The Supreme Court recently re-emphasized the burdens a defendant must

25  overcome to establish ineffective assistance of counsel:

26

27  _____

28       [4] This claims is denied because the Court of Appeals considered the motion to suppress on the merits and
found that the district court properly denied it.

1
2
3
4
5
6
7
8

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

9

Harrington v. Richter, 562 U.S. 86, 105 (2011).

10
11
12
13
14
15
16

Plaintiff's first claim for ineffective assistance of counsel is denied because he has failed to demonstrate prejudice from the failure to contest search methodology. He has cited **NO** cases that suggest such a strategy would have a chance of success on the merits and cited nothing to suggest the outcome of the case would have been affected if he had contested that information. Further, the Court, *supra*, has already demonstrated that case law already makes success on the merits of a Fourth Amendment trespass claim unlikely at best. Therefore, it was not ineffective assistance for Savanh's counsel to fail to raise that argument.

17
18
19
20

Second, trial counsel's failure to timely raise the suppression issues are moot because both the trial court and the appellate court considered the motion to suppress on its merits and denial of the motion to suppress was affirmed. Therefore, Defendant suffered no prejudice from his attorney's failure to raise them timely.

21
22
23
24
25
26
27
28

Third, trial counsel's alleged failure to retain and consult analysts also fails. Defendant's mere assertion that other experts would have done a better job is insufficient to overturn the prior proceedings. Further, asking for discovery so that the same expert can have more time to try to create reasonable doubt after being unable to do it the first time is at a best an unreasonable fishing expedition. The jury heard the "hacker made me do it" defense and rejected it. Defendant's trial counsel was not ineffective for failing to discover the original defense expert's poor credentials. The Court, too, initially certified him as an expert, but it was not until the Government conducted *voir dire* of the witness at trial -- revealing previously unknown

1    information about the witness -- that his credentials were called into question. A defendant "has

2    no constitutional guarantee of effective assistance of experts." Earp v. Cullen, 623 F.3d 1065,

3    1077 (9th Cir. 2010). Further, the Court cannot say that trial counsel's performance fell outside

4    of the wide range of reasonable professional assistance. Even if it did, in this case, where

5    Defendant admitted to knowingly receiving the pornography, there is no reasonable probability

6    that confidence in the outcome would be undermined.

7         Fourth, the argument that Savanh could have discredited his own testimony with that of

8    an expert explaining why cultural factors would cause him to confess to a crime he did not

9    commit is entirely speculative. "Speculation about what an expert could have said is not enough

10   to establish prejudice." Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997); see also Wildman

11   v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (rejecting an ineffective assistance claim based on

12   the failure to retain arson expert where the petitioner offered no evidence that an expert would

13   have testified on his behalf at trial). Here, counsel for Defendant offers the report of Dr. Richard

14   Samuels. However, while that report states on the front page that it was prepared for Defendant's

15   § 2255 counsel, it is nothing but a summary of many studies or academic papers about the

16   psychology of confessions and interrogation. It does not state what Dr. Samuels would say if

17   called to testify, that it would assist the defense, or what cultural factors would have influenced

18   Savanh. Accordingly, Defendant has failed to show that trial counsel's failure to call a cultural

19   expert was unprofessional. See Harrington v. Richter, 562 U.S. 96, 107 (2011) ("Counsel was

20   entitled to formulate a strategy that was reasonable at the time and to balance limited resources in

21   accord with effective trial tactics and strategies").

22        Fifth, Defendant's assertion that trial counsel's performance fell to an unprofessional

23   standard is belied by the record. He adequately contested the computer forensic testimony and

24   experts. He called into question the methods and conclusions of witnesses, including raising

25   questions about the location of the pornography on the computer and whether it may have been

26   used by a hacker and not observed by Defendant. Despite his best professional efforts, the jury

27   rejected this claim. There is no showing that the outcome of the trial would have been different

28   with different counsel; it is pure speculation.

Sixth, again Defendant challenges his attorney's decision not to pursue information without any showing that doing so would have altered the outcome of the trial. Defendant asserts that his "new computer" purchased in 2008 had files from 2003 on it. However, he makes no showing that those files were relevant to this action. Further, computer experts examined the computer and none recognized and raised this issue for prosecution or defense. Defendant has failed to raise an issue about trial counsel's performance and whether it prejudiced him.

Seventh, Defendant asserts that trial counsel was ineffective for failing to investigate alibi defenses. In other words, he wanted counsel to pursue employment records and soccer schedules so that he could prove he was not at home during downloads of child pornography on his computer. However, this argument is a red herring. While trial testimony did show that Defendant's shifts ended shortly before downloads or alterations to the pornography computer files occurred, contrary evidence would not have been determinative as to Defendant's receipt of child pornography, because the P2P file sharing does not require Defendant to be present at the time a file is uploaded or downloaded. Accordingly, Defendant has failed to make showing of prejudice.

F. Ground Seven: Ineffective Assistance of Appellate Counsel

"In applying Strickland to a claim of ineffective assistance of appellate counsel, [the Ninth Circuit has stated] that:

> [Strickland's] two prongs partially overlap when evaluating the performance of appellate counsel. In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.... Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason—because she declined to raise a weak issue."

Bailey, 263 F.3d at 1028-29 (quoting Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989) (internal citations and footnotes omitted)). Here, the Court has already highlighted that the appellate attorney was not constitutionally deficient for failing to raise Fourth Amendment violations that were weak at best. Further, the Court has already shown that a Rule 29 sufficiency of the evidence claim was made by trial counsel and appellate counsel. The trial court denied the

1  motion and the appellate court affirmed the trial court's judgment. Therefore, this issue is law-of-

2  the-case and denied.

3        Further, the Court has shown that the prosecutor did not commit misconduct and to raise

4  that non-existent claim on appeal after it had not been pursued at or before trial would have been

5  a waste of the arguments appellate counsel was allowed to raise. Defendant has failed to show

6  that appellate counsel's failure to raise this claim on appeal fell below an objective standard of

7  reasonableness or that he suffered prejudice from it.

8        G. Ground Eight: Failure of Appellate Counsel to Object to Conditions of Supervised

9        Release

10        Whether it was ineffective to appeal imposition of conditions of supervised release

11  depends on whether "they are reasonably related to the goal of deterrence, protection of the

12  public, or rehabilitation of the offender." United States v. T.M., 330 F.3d 1235, 1240 (9th Cir.

13  2003) (citing 18 U.S.C. §§ 3583(d)(1), 3553(a)). "The supervised release conditions need not

14  relate to the offense for which [the defendant] was convicted as long as they satisfy any of the

15  conditions set forth [in § 3583(d)(1) ]." Id.; see also United States v. Blinkinsop, 606 F.3d 1110,

16  1119 (9th Cir. 2010) (" 'A condition of supervised release does not have to be related to the

17  offense of conviction,' because the sentencing judge is statutorily required 'to look forward in

18  time to crimes that may be committed in the future' by the convicted defendant." (quoting United

19  States v. Wise, 391 F.3d 1027, 1031 (9th Cir. 2004))).

20        Defendant asserts that the Court did not make an individualized assessment in imposing

21  the conditions. However, the Court made a lengthy statement discussing the details of

22  Defendant's case and his actions. Therefore, the Court rejects this contention, but will consider

23  each objection in turn. To the extent that Defendant is making a blanket objection to every

24  condition of supervised release, the motion is denied. It is not up to the court to determine which

25  condition Defendant is objecting to and which arguments apply to which condition. Again, the

26  Court notes Defendant has failed to cite a single case supporting his position.

27        First, the Court did not "lecture" Defendant because he was from an Asian country. The

28  Court was justifying the lengthy sentence recommended by the Guidelines after Defendant had

asked for a time-served sentence. The Court emphasized that child pornography was a "big problem" in the United States and that more emphasis was being placed upon it by lawmakers and law enforcement.

Next, Defendant argues "the conditions impose greater deprivation of liberty than is reasonably necessary and reasonably relate to the nature of the offense[.]" The Court disagrees for the reasons stated at the sentencing hearing. Further, these statements are generalized and do not correspond with any specific condition.

Specifically, Defendant mentions lifetime supervision. The Court gave detailed reasons including Defendant's failure to take responsibility, his masturbation to the child pornography images, and the volume of images (600+) in arriving at the term of supervision. Again, these same factors counseled in favor of sex offender treatment, prohibition on contact with minors, prohibition of possession of adult pornography, and dangerous weapons.

Defendant also argues that based on Defendant's history and characteristics the mandatory drug testing condition should have been appealed. However, trial counsel did not object to it at sentencing. The Court, outside of habeas proceedings, routinely suspends this requirement upon a showing in the defendant's pre-sentence report or when other reliable information indicates that there is a low risk of future substance abuse by defendant. See U.S.S.G. §5B1.3(a)(5); 18 U.S.C. § 3563(a). Accordingly, the motion to set aside, modify, or vacate the  conditions of supervised release based upon ineffective assistance of appellate counsel is denied.

IV. Certificate of Appealability

The Court must decide whether to grant Movant a certificate of appealability. A certificate of appealability permits a § 2255 petitioner to pursue a direct appeal from a district court's final order denying the petition. It is only available where the petitioner has made a "substantial showing" of a constitutional deprivation in his initial petition. 28 U.S.C. § 2253(c)(2); United States v. Welch, 136 S. Ct. 1257, 1263 (2016). A petitioner has made a substantial showing of a constitutional deprivation when reasonable jurists could debate whether the petition should have been resolved in a different manner. Slack v. McDaniel, 529 U.S. 473,

484 (2000). This is not the case here. Movant's arguments are belied by the record. He has neither shown that his counsel's performance was deficient nor that he was prejudiced by that performance. Therefore, Movant has not made the substantial showing necessary to warrant a certificate of appealability.

V. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Leave to Amend (#240) is **GRANTED**;

IT IS FURTHER ORDERED that Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (#232/241) is **DENIED**;

IT IS FURTHER ORDERED that Defendant is **DENIED a Certificate of Appealability**;

IT IS FURTHER ORDERED that all other outstanding motions are **DENIED as moot**;

IT IS FURTHER ORDERED that IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Respondent and against Petitioner in the corresponding civil action, 2:19-cv-1693-KJD, and close that case.

Dated this 30th day of March, 2023.

Kent J. Dawson
United States District Judge